IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

WESLEY MEREDITH, JR., Individually
and as class representative on behalf
of all similarly situated persons; DAWN
MEREDITH, Individually and as class
representative on behalf of all similarly
situated persons; DOMINGO SANTOS,
Individually and as class representative
on behalf of all similarly situated persons;
ESMERALDA SANTOS, Individually
and as class representative on behalf
of all similarly situated persons; ALEX
CRUZ, Individually and as class representative
on behalf of all similarly situated persons;
and MAYELA CRUZ, Individually
and as class representative on behalf
of all similarly situated persons                                                                PLAINTIFFS

VS.                                    Case No. 05-CV-4050

CLAYTON HOMES, INC. and CMH
HOMES, INC.                                                                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Remand. (Doc. 8) Defendants have responded. (Doc. 12) Plaintiffs have filed a Reply. (Doc. 17) The Court finds the motion ripe for consideration.

### I. BACKGROUND

On July 6, 2005, Separate Defendant CMH Homes, Inc. removed this lawsuit to this Court from the Circuit Court of Miller County, Arkansas, asserting this Court has jurisdiction under 28 U.S.C. § 1332(a), (d).[1] Separate Defendant Clayton Homes contemporaneously

---

[1] 28 U.S.C. § 1332(d) is part of the Class Action Fairness Act of 2005. ("CAFA") Other parts of CAFA are codified throughout Title 28 of the United States Code.

consented to removal.² Plaintiffs' putative class action complaint alleges a claim of fraud against Clayton Homes and seeks injunctive relief and damages. Plaintiffs' filed the pending motion to remand, arguing this Court lacks subject matter jurisdiction over this suit under either § 1332(a) or (d).

## II. DISCUSSION

**A.     The Complaint**

Plaintiffs' complaint alleges they were the victims of CMH's fraud when purchasing mobile homes from CMH. Plaintiffs allege they were fraudulently made to pay additional money for wheels and axles on the purchased mobile homes. The factual basis for Plaintiffs' fraud claim is stated as follows:

> [CMH] had a duty to disclose to Plaintiffs its knowledge of the charge for the wheels and axles. Rather than disclosing the charge to the Plaintiffs, [CMH] wrongfully profited from [its] failure to disclose aid [*sic*] charge. As such, Plaintiffs by virtue of the acts of fraud by [CMH] are unaware. . . that they were charged for the wheels and axles, actually paid monies for the wheels and axles, and that [CMH] profited from their unknowing purchase of the wheels and axles and the re-sale of the wheels and axles unknowingly to the customer to have been bought by them. As a consequence, Plaintiffs could not have, with the exercise of real caution, prudence, or diligence discovered the charges. In fact, in an effort to conceal the charge, this charge or the representation that the customer is being charged for the wheels and axles appears no where [*sic*] on any of the documents the Plaintiffs are asked to sign during the purchase of the home. These facts are intentionally not disclosed to purchaser in an effort to fraudulently induce them into purchasing the home, including the execution of numerous documents.³

Plaintiffs allege CMH has sold thousands of manufactured homes within the state of Arkansas⁴

---

² The Court will refer to Separate Defendants CMH Homes, Inc. and Clayton Homes, Inc. collectively as "CMH."

³   Doc. 1, Ex. A, (Complaint) ¶ 5.1.

⁴ *Id.* at ¶ 3.2.

2

and a class, if certified, would number into the hundreds of thousands.[5] The complaint states

> [CMN] made numerous express and implied representations and gave assurances to Plaintiffs, including[,] but not limited to the following:
>
> a.  Plaintiffs were not being charged for the wheels and axles;
>
> b.  Plaintiffs were not paying any monies for the wheels and axles;
>
> c.  Plaintiffs were not purchasing the wheels and axles; and
>
> d.  Plaintiffs did not purchase the wheels and axles.
>
> [CMH] knew that the receipt of such representations would have been important to Plaintiffs and purposely withheld such information in an effort to induce them into purchasing the home. [CMH] knew such representations, assurances, omissions and concealment were fraudulent, false, and/or misleading at the time they were made. [CMH] intended for Plaintiffs to rely upon such fraudulent, false and/or misleading representations, assurances, omissions and concealment. Plaintiffs reasonably and justifiably relied upon such false and/or misleading representations, assurance, omission and concealment to their detriment.[6]

Plaintiffs requested relief as follows:

> Plaintiffs individually and as. . . class representatives on behalf of all similarly situated persons and/or entities respectfully request the Court grant the following relief and/or enter judgment against [CMH], jointly and severally for the following:
>
> a)  Certify this cause of action as a class action pursuant to A.R.C.P. 23 and appoint Plaintiffs as Class representatives and Plaintiff's counsel as Class counsel;
>
> b)  Award appropriate monetary damages to Plaintiffs and the proposed Class in an amount equal to the amount improperly charged for wheels and axles; provided that Plaintiffs seek less than $75,000 total recover [*sic*] for each Plaintiff and/or Class Member;
>
> c)  Awarding such equitable relief permitted, including an injunction requiring [CMH] to cease the fraudulent activity; provided that

---

[5] *Id.* at 4.4.

[6] *Id.* at ¶ 7.2.

3

> Plaintiffs seek less than $75,000 total recovery for each Plaintiff and/or Class Member.
>
> d) Awarding pre-judgment interest to prevent [CMH] from receiving unjust enrichment from their improper conduct; provided that Plaintiffs seek less than $75,000 total recovery for each Plaintiff and/or Class Member;. . .
>
> Whether by restitution, remediation, money damages, and/or injunctive relief, or any combination thereof, Plaintiffs seek recovery of less than $75,000 for each Plaintiff or Class Member from [CMH], including all interests and costs, including prejudgment interest, post-judgment interest, court costs, and attorneys fees. Therefore, although Plaintiffs contend that [CMH is] liable for all damages and relief owed to each Plaintiff and Class Member, Plaintiffs expressly seek less than $75,000 total on behalf of each Plaintiff or Class Member. Pursuant to Arkansas Rule of Civil Procedure 8(a), each Plaintiff and each Class Member is limited to less than a $75,000 recovery. . . Plaintiffs allege that they were unknowingly charged $1,200 for the wheels and axles and that [CMH] then re-sold the wheels and axles for $1,000. Therefore, the amount in controversy for each Plaintiff or class member is approximately $2,200, well below the $75,000 threshold for diversity jurisdiction.[7]

**B.    28 U.S.C. § 1332(a); Diversity Jurisdiction**

    **1.    *Exxon Mobil Corp. v. Allapatah Services, Inc.*, 125 S.Ct. 2611, ____ U.S. ____ (2005)**

CMH argues the United States Supreme Court recent *Exxon Mobil Corp. v. Allapatah Services, Inc.*, 125 S.Ct. 2611, ____ U.S. ____ (2005) decision overrules Eighth Circuit precedent regarding the aggregation of claims to establish diversity of citizenship jurisdiction in putative class actions. The Court disagrees. The holding of *Exxon Mobil* was that under 28 U.S.C. § 1367, a federal court sitting in diversity may exercise supplemental jurisdiction over additional plaintiffs who fail to satisfy the minimum amount in controversy requirement, as long as other elements of diversity jurisdiction are present, at least one named plaintiff satisfies the amount in controversy requirement, and the additional plaintiffs' claims are part of the same case

---

[7] *Id.* at ¶ 9.1.

or controversy as those of plaintiffs who allege a sufficient amount in controversy. *Id.*, 125 S.Ct. at 2620-1, ____ U.S. at ____. *Exxon Mobil* is not about aggregation. The only effect of *Exxon Mobil* on this case is that if any of the Plaintiffs' claims, standing alone, satisfies the diversity of citizenship requirements to give this Court jurisdiction, the Court may exercise supplemental jurisdiction over the other Plaintiffs and class members' claims, even though the other Plaintiffs and class members' claims do not independently satisfy the diversity of citizenship requirements. Therefore, the Court must decide whether any of the named Plaintiffs satisfy the amount in controversy requirements.

### 2. Amount in Controversy

#### a. Compensatory Damages and "Total Sale Price"

It is undisputed that the parties are diverse. Wesley and Dawn Meredith are citizens of Arkansas, and Domingo and Esmeralda Santos and Alex and Mayela Cruz are residents of Texas.[8] Clayton Homes, Inc. is a Delaware corporation with its principal place of business in Tennessee, and CMH Homes, Inc. is a Tennessee corporation with its principal place of business in Tennessee.[9] Therefore, the Court must decide whether the amount in controversy exceeds the $75,000 requirement in 28 U.S.C. § 1332(a).

CMH attempts to use the Cruz's "Total Sale Price" of $84,156.00 recited in their contract and security agreement[10] with CMH to establish the requisite amount in controversy. CMH reasons that since Plaintiffs allege they were fraudulently induced into purchasing a

---

[8] *Id.* at ¶¶ 2.0 & 2.1.

[9] *Id.* at ¶¶ 2.2. & 2.3.

[10] Doc. 1, Ex. D. Retail Installment Contract - Security Agreement between CMH and the Cruzes.

5

manufactured home from CMH and the manufactured home cost the Cruzes $84,156.00, the $75,000 amount in controversy is satisfied. Plaintiff argues they have specifically only plead damages, which they specifically limit to approximately $2,200 per contract, for the alleged fraudulent purchase of wheels and axles on the manufactured home. The Court agrees with Plaintiffs. If the complaint were more ambiguous, the Court may give CMH's argument more weight. However, the monetary damages requested by Plaintiffs is specific and clearly limited to approximately $2,200 per contract, well below the requisite amount in controversy. Therefore, the Court finds Plaintiffs' request for compensatory damages does not satisfy the amount in controversy.

        **b.**       **Injunctive Relief**

Plaintiffs' claim for injunctive relief can satisfy the amount in controversy if the claim can be valued at $75,000 or more. Whether the injunctive relief is valued at $75,000 or more is a matter of perspective. The Court has no doubt the injunctive relief sought by Plaintiffs is worth a great deal less than $75,000 to them. If they obtain the injunctive relief sought, future buyers of manufactured homes will not pay for wheels and axles and CMH will be required to stop supplying manufactured homes with wheels and axles, at least in the fraudulent manner as alleged by Plaintiffs. This relief is of little monetary value to Plaintiffs because it is prospective in nature and would largely benefit future buyers. On the other hand, the Court has no doubt the cost to CMH of complying fully with the injunctive relief would far exceed $75,000. The injunctive relief would possibly require CMH to stop selling wheels and axles with its manufactured homes, costing CMH $2,200 per sale. CMH sells thousands of manufactured homes. Therefore, whether the amount in controversy requirement for diversity jurisdiction

exists depends on whether the value of injunctive relief is measured from Plaintiffs' or CMH's perspective.

In an action seeking injunctive relief, the amount in controversy for jurisdictional purposes is measured by the value of the object of the litigation. *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 97 S.Ct. 2434 (1977). As in *Hunt,* sometimes identifying the "object of the litigation" is easy. However, in cases like these, identifying the "object of the litigation" depends on the effect of the relief sought on the adversarial parties.

For the purpose of determining whether the amount in controversy exists in diversity cases, the Eighth Circuit has decided to measure injunctive relief by the value to the plaintiff of the right sought to be enforced. *See Burns v. Massachusetts Mut. Life Ins. Co.*, 820 F.2d 246 (8th Cir. 1987). The Eighth Circuit recently reinforced this precedent. *See James Neff Kramper Family Farm Partnership v. IBP, Inc.*, 393 F.3d 828 (8th Cir. 2005). The Second, Third, and Eleventh Circuits also explicitly agree. *See Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805 (11th Cir. 2003); *Packard v. Provident Nat. Bank*, 994 F.2d 1039 (3d Cir.1993); *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.3d 82 (2nd Cir. 1991). The Seventh, Ninth, and Tenth Circuit allow courts to view the cost of compliance to the injunction by the defendant when determining whether the amount in controversy is met. *See Uhl v. Thoroughbred Technology and Telecommunications, Inc.*, 309 F.3d 978 (7th Cir. 2002); *In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952 (9th Cir. 2001); *Oklahoma Retail Grocers Ass'n v. Wal-Mart Stores, Inc.*, 605 F.2d 1155 (11th Cir. 1979). Other circuits have not explicitly addressed the issue.

The Court feels bound to adhere to the Eighth Circuit precedent. The Court notes CMH's

argument that the Eighth Circuit has not completely foreclosed the idea of considering the "defendant's viewpoint" for possible injunctive relief when determining the amount in controversy. However, reading all of the Eighth Circuit opinions regarding aggregation of class members' claims to reach the requisite amount in controversy shows a common thread of strictly defending the idea that federal courts are courts of limited jurisdiction. The Court is hesitant to find itself in the position of the district court in *Kessler v. National Enterprises, Inc.*, 347 F.3d 1076 (8th Cir.2003) and have an eventual resolution of this lawsuit thrown out on appeal because it lacked subject matter jurisdiction at the beginning of the suit. The Court's hesitance is heightened by the absence of Eighth Circuit precedent allowing consideration of CMH's argument. The Court finds the value of Plaintiff's injunctive relief is far below $75,000 and the requisite amount in controversy does not exist on this basis. The Court finds the requisite amount in controversy under 28 U.S.C. § 1332(a) does not exist in this case, and therefore the Court lacks jurisdiction based on diversity of citizenship.

### C. The Class Action Fairness Act of 2005 ("CAFA")

CMH believes that this Court has jurisdiction under CAFA for two reasons. First, CMH argues this action was filed on February 18, 2005, the date CAFA was enacted. Second, CMH argues that this action was not "commenced" until August 5, 2005, when it was removed to this Court.

#### 1. Date of Filing

Section 9 of CAFA states, "The amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act." 119 Stat. at 14. The date of enactment of CAFA is February 18, 2005. *Id.* at 4. The complaint shows it was filed in the

8

Circuit Court of Miller County, Arkansas on "2005 FEB 17 AM 5:00."[11] The complaint was assigned Case No. "CV-2005-72-2."[12] A complaint with the preceding case number, "CV-2005-71-1" shows it was filed "05 FEB 17 PM 4:41."[13] A complaint with the succeeding case number, "CV-2005-73-3" shows it was filed "05 FEB 18 PM 4:46."[14] Defendant argues the inconsistency, that Case No. CV-2005-71-1 was filed on February 17, 2005 at 4:41 pm and Case No. CV-2005-72-2 was filed on February 17, 2005 at 5:00 am, in the file marks from the Circuit Court of Miller County means the Plaintiffs complaint must have been filed on February 18, 2005. The Court disagrees that this inconsistency leads to the conclusion that Plaintiffs' complaint was filed on February 18, 2005. The times of filing are inconsistent, but the dates are not inconsistent.

In any event, Plaintiffs have produced the affidavits[15] of Wanda Davis, the Circuit Clerk of Miller County, Arkansas, and Fay Deen, a deputy circuit clerk for Miller County, Arkansas that satisfies any discrepancy. Their affidavits show the Miller County Circuit Clerk's Office has four electronic file stamp machines. Any of the machines may be used on any given complaint. One of the machines only denotes a two-digit year stamp, i.e. "05" for the year 2005. Case Nos. 2005-CV-71-1 and 2005-CV-73-3 were file marked with this machine. The Circuit Clerk's office has experienced problems with the time reading produced by its machines, but no

---

[11] Complaint, p. 1.

[12] *Id.*

[13] Doc. 12, Ex. A.

[14] Doc. 12, Ex. B.

[15] Doc. 17, Exs. A & B.

9

problems with the date reading. These affidavits satisfy the Court that this action was filed on February 17, 2005, a day before CAFA was enacted, and the Court finds Plaintiffs filed their complaint in the Circuit Court of Miller County, Arkansas on February 17, 2005.

### 2. The Meaning of "Commenced"

CMH also believes this Court has jurisdiction over this lawsuit under CAFA. This suit began on February 17, 2005, when Plaintiffs filed their putative class action complaint in the Circuit Court of Miller County, Arkansas. CMH received service of process on June 6, 2005 and removed this case to this Court on July 6, 2005. Therefore, whether CAFA is applicable to this civil action depends on whether this civil action was "commenced" on February 17, 2005, the date it was filed in the Circuit Court of Miller County, Arkansas, June 6, 2005, the date of service of process, or July 6, 2005, the date it was removed to this Court.

Removal statutes are to be strictly construed. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868 (1941); *see also Nichols v. Harbor Venture, Inc.*, 284 F.3d 857 (8th Cir. 2002). In *Pritchett v. Office Depot, Inc.*, 404 F.3d 1232 (10th Cir. 2005), the Tenth Circuit Court of Appeals strictly construed § 9 of CAFA, holding the term "commenced" in that section refers to the date the civil action was first filed in state court, not the date that it was removed to federal court. The *Pritchett* Court first looked to the language of the statute. *Pritchett*, 404 F.3d at 1235. It observed that traditionally, but with some exceptions, under Fed. R. Civ. P. 3, a civil action is commenced when it is first brought in an appropriate court. *Id.* In a much earlier case, a district court in Texas observed, "A suit must commence somewhere. It can't be removed until it has been commenced. You can't remove something that does not exist." *Barron v. American Motorists Ins. Co.*, 170 F.Supp. 412, 414 (N.D. Tex. 1958).

To the extent the term "commenced" is ambiguous, the *Pritchett* Court analyzed legislative history of CAFA and found the history to be persuasive in giving the term a narrow construction. *Id.* at 1235-7. The removal provisions in the original bill presented in the House of Representatives applied to both cases "commenced" on or after the enactment date and to cases in which a class certification order is entered on or after the enactment date. *Id.* at 1235-6, *citing* H.R. 516, 109th Cong. § 7 (2005). Neither the Senate's version of the bill nor the final statute passed by both houses of Congress allowed removal of civil actions certified on or after the enactment date. *Id.* at 1236, *citing* S. 5, 109th Cong. § 9 (2005); § 9, 119 Stat. at 14. It is clear then that Congress' intent was to narrow the removal provisions of CAFA from the broader language in the House's version. Also, two statements from sponsoring legislators, Senator Dodd and Rep. Goodlatte, indicate CAFA was not designed to apply to currently pending civil actions. *Id.* at 1236, *citing* 151 Cong. Rec. S1080 (daily ed. Feb. 8, 2005) (statement of Sen. Dodd) ("[CAFA] does not apply retroactively, despite those who wanted it to. A case filed before the date of enactment will be unaffected by any provision of this legislation."); 151 Cong. Rec. H753 (daily ed. Feb. 17, 2005) (statement of Rep. Goodlatte) ("Since the legislation is not retroactive, it would have absolutely no effect on the 75 class actions already filed against Merk in the wake of the Vioxx withdrawal.") The *Pritchett* Court observed floor statements are usually given little weight when construing statutes, but these statements were consistent with a normal statutory construction analysis. *Id.* at 1236-7.

As noted in *Pritchett*, CMH's argument that "commence" for removal purposes means the date of removal is supported by a line of cases interpreting the term when Congress increased the amount-in-controversy requirement for diversity of citizenship cases. *Id.* at 1237-8, *citing*

*Lorraine Motors, Inc. v. Aetna Cas. & Sur. Co.*, 170 F.Supp. 412 (D.C. Tex. 1958); *Hunt v. Transport Indem. Ins. Co.*, No. 90-00041, 1990 WL 192483, *5-6 (D. Haw. July 30, 1990) (unpublished). Contemporaneous authority analyzing similar cases, however, concluded "commenced" meant the date of filing in state court. *Kieffer v. Travelers Fire Ins. Co.*, 167 F.Supp. 398 (D. Md. 1958); *see also Rhinehart v. Cincinnati, Inc.*., 176 F.Supp. 7 (E.D. Mich. 1989). Since these cases did not interpret CAFA, the *Pritchett* Court believed these cases were only relevant by analogy, and concluded cases like *Lorraine Motors* actually supported a construction of "commenced" as being the date of filing. *Pritchett*, 404 F.3d at 1237.

This Court agrees with the *Pritchett* decision and CMH, while making the best arguments it can, has not changed the Court's mind. The Court does believe this is the type of class action Congress now intends to be heard in federal court by expanding a district court's jurisdiction over putative class action suits. However, the Court cannot ignore the solid legal analysis of *Pritchett* and decide it has jurisdiction over this case. Also, the Court is mindful that this case, unlike *Pritchett*, was removed within the 30 day deadline set forth in 28 U.S.C. § 1446(b). The public policy section of the *Pritchett* decision is, therefore, inapplicable to this suit. *See Pritchett*, 404 F.3d at 1238. However, the fact that CMH timely complied with § 1446 has little bearing on the statutory construction of the term "commenced" in § 9 of CAFA. The Court does not believe this action was "commenced" on the date CMH was served with process or the date CMH removed it to this Court. Instead, the Court finds this action was "commenced" for the purposes of CAFA on February 17, 2005, when Plaintiffs filed their complaint in the Circuit Court of Miller County. The Court finds CAFA does not apply to this case, and CAFA does not give this Court jurisdiction over this matter.

The Court has the same reasoning now as it did when it issued its decision in *Lane's Gifts and Collectibles, L.L.C., et al v. Yahoo!, Inc., et al*, 05-CV-4027. Defendants in *Lane's Gifts* filed a Petition for Permission to Appeal the Court's decision to remand the case to state court because CAFA did not apply. (05-CV-4027, Docs. 93) The Eighth Circuit Court of Appeals recently denied the petition (05-CV-4027, Doc. 95), perhaps tacitly agreeing with *Pritchett.*

### III. CONCLUSION

For reasons discussed herein and above, the Court finds Plaintiffs' Motion to Remand should be and hereby is **granted.** This case is hereby remanded to the Circuit Court of Miller County, Arkansas.

IT IS SO ORDERED, this 14th day of September, 2005.

/s/ Harry F. Barnes
Hon. Harry F. Barnes
U.S. District Court